UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

───────────────────────────────────────

LUIS AVINCOLA,

                              Plaintiff

        vs.                                      9:07-CV-127 (TJM/GJD)

DR. EDWARD MARRA,

                              Defendant

───────────────────────────────────────

LUIS AVINCOLA, Plaintiff *Pro Se*
DAVID L. COCHRAN, Assistant Attorney General for Defendant

THOMAS J. McAVOY, Senior United States District Judge

### MEMORANDUM DECISION AND ORDER

      In this civil rights complaint, plaintiff, an inmate in the custody of the New York Department of Correctional Services ("DOCS"), alleges that Dr. Edward Marra, a dentist employed by DOCS, was negligent when he extracted plaintiff's tooth #15.  Complaint (Compl.)(Dkt. No. 1).  Plaintiff alleges that during the extraction, defendant negligently cut a piece of plaintiff's upper left jawbone creating an "oral-antrum communication" into plaintiff's palate.  (Compl. ¶¶ 15, 17).  Plaintiff also alleges that, on two occasions subsequent to the initial extraction, defendant Marra was unsuccessful in attempting to close the opening resulting from the extraction of tooth #15. (Compl. ¶¶ 19, 22). Plaintiff's first, second and fourth causes of action allege negligence by defendant in extracting the tooth, and allege that the defendant failed to follow DOCS procedures.  (Compl. ¶¶  41, 43). Plaintiff's first and third causes of action allege deliberate indifference by defendant to plaintiff's serious dental needs.  (Compl. ¶¶  40, 42).

      Presently before the court[1] is defendant's motion for summary judgment, pursuant to

---

[1] The parties are advised that the referral to a Magistrate Judge as provided for under Local Rule 72.3 has been rescinded for purposes of this motion, and as such, any appeal taken from this order, if appropriate, will be to the Court of Appeals for the Second Circuit.

FED.R.CIV.P. 56. (Dkt. No. 48). Plaintiff has not filed any opposition to defendant's motion, despite an extension of time to do so. (Dkt. No. 52, 53). For the following reasons, this court will grant defendant's motion in part and deny defendant' s motion in part without prejudice to renew.

### DISCUSSION

**1. <u>Summary Judgment</u>**

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. FED. R.CIV.P. 56; *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted). Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id.* However, when the moving party has met its burden , the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986).

In meeting its burden, the party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying the portions of the "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-movant bears the burden of proof at trial, the moving party may show that he is entitled to summary judgment by either (1) pointing to evidence that negates the non-movant's claims or (2) identifying those portions of the non-movant's evidence that demonstrate the absence of a genuine issue of material fact. *Salahuddin v. Goord,* 467 F.3d 263, 272-73 (2d Cir. 2006)(citing *Celotex Corp.*, 477 U.S. at 323). The second method requires identifying evidentiary insufficiency, not merely denying the opponent's pleadings. *Id.*

2

The Local Rules of the Northern District of New York provide that a motion for summary judgment shall include a Statement of Material Facts, "containing each material fact about which the moving party contends there exists no genuine issue.  Each fact listed shall set forth a specific citation to the record where the fact is established." LOCAL RULES NDNY 7.1(a)(3).  The "record" for purposes of the Statement of Material Facts includes the "pleadings, depositions, answers to interrogatories, admissions, and affidavits." *Id.*  The Second Circuit has held, however, that in determining whether the moving party has met his burden, the court may not rely solely on the statement of undisputed facts, it must be satisfied that the citation to evidence in the record supports the assertion. *Vermont Teddy Bear Co. v. 1-800 BEARGRAM Co.*, 373 F.3d 241, 244 (2d Cir. 2004). If the moving party fails to meet its burden, the court must deny summary judgment even if the opposing party does not present any opposing evidentiary matter. *Id.* (citation omitted).

However, if the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial.  *Id.*  A dispute about a genuine issue of material fact exists if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party."  *Anderson,* 477 U.S. at 248.  In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant.  *See United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).  Additionally, while a court "'is not required to consider what the parties fail to point out,'" the court may in its discretion opt to conduct "an assiduous view of the record" even where a party fails to respond to the moving party's statement of material facts. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001)(citations omitted).

## 2. Facts

Plaintiff's allegations in this case cover the period when he was incarcerated at Great Meadow Correctional Facility ("GMCF") between 2001 and 2006.  Plaintiff's complaint concerns Dr. Marra's

extraction of plaintiff's maxillary molar (tooth #15) on December 24, 2004 and defendant Marra's subsequent attempt to repair a small opening in plaintiff's upper palate.  (Compl. ¶¶ 15, 19, 28, 31). Plaintiff states in his complaint that on November 27, 2004, he was examined by Dr. Marra because his tooth #15 and the surrounding area was irritated and plaintiff had ". . . gum line erosion, pain and bleeding . . . ." (Compl. ¶ 12).  Plaintiff alleges that not only was the extraction negligently performed, resulting in the small opening through his palate into his sinus cavity, but that all the follow-up procedures by Dr. Marra and other medical personnel were negligently performed. (Compl. ¶¶ 21-24).

In support of his motion for summary judgment, defendant Marra has submitted his affidavit. (Mara Aff.)  In his affidavit, Dr. Marra states that plaintiff had a history of chronic periodontal infections which causes pain, swelling and the destruction of surrounding supporting structures. (Marra Aff. ¶ 5)(Dkt. No. 48- 4).  Dr. Marra states that plaintiff's "periodontally compromised tooth # 15 resulted from ". . . a lack of appropriate oral concern throughout his life, as is reflected by the condition of his mouth." Marra Aff. ¶ 5.  Dr. Marra specifically states that plaintiff had a history of infection and pain from tooth #15 since March 18, 1999, and he was treated by "three different dentists  . . . for periodontal abscesses" on seven different occasions between 1999 and December of 2004.  (Marra Aff. ¶¶ 4, 5).

Plaintiff alleges that Dr. Marra did not follow DOCS procedures regarding the December 24th tooth extraction because he did not send plaintiff to an "outside specialist."  Plaintiff claims that defendant Marra negligently performed the actual extraction which resulted in a perforation to plaintiff's sinus. (Compl. ¶¶ 13-18).  Dr. Marra states that the December 24th extraction of plaintiff's second maxillary molar was performed to eliminate "further infection and pain which the patient had

been experiencing since March 18, 1999." (Marra Aff. ¶ 4).

Dr. Marra's affidavit states that plaintiff's anatomical characteristics include bilaterally enlarged maxillary sinuses. Because of these characteristics, the roots of plaintiff's maxillary molars are "engulfed" by his sinuses. (Mara Aff. ¶ 6). Dr. Marra states that this condition is not rare, and sometimes results in the creation of an oral-antral communication when extracting teeth. *Id.* Dr. Marra notes that plaintiff agreed to have tooth #15 extracted, and that the tooth needed to be extracted because of plaintiff's history of chronic periodontal infections, regardless of plaintiff's anatomical make-up. (Mara Aff. ¶ 7). Dr. Marra states that proper surgical procedures, post-operative instructions and medications were given to the plaintiff. *Id.* He further alleges that the "resulting oral-antral communication was nether (sic) life threatening nor a serious health condition". *Id.* Dr. Marra states that plaintiff had follow-up appointments on December 29, 2004, January 3, and January 7, 2005. *Id.*

Dr. Marra states that on January 7, 2005, he recommended a minor surgical procedure to attempt to close the oral-antral communication, and plaintiff agreed to the procedure. (Marra Aff. ¶ 7). The procedure was performed on the same day, and Dr. Marra states that the procedure was successful in decreasing the size of the communication, but did not eliminate it. (Marra Aff. ¶ 8). Dr. Marra states that this was revealed in the follow-up appointments of January 10 and Januray 14, 2005. *Id.* Dr. Marra states that he performed a second surgery on January 21, 2005, and saw plaintiff again on January 24, 28, February 4, 9, 11, 16, 23, 25, and March 2, 2005.

The surgeries and healing had reduced the size of the oral-antral communication to 1 mm x 1 mm. *Id.* Dr. Marra states that although the small opening may have closed by itself, he decided to obtain a second opinion by an oral surgeon . *Id.* On March 8, 2005, plaintiff was transferred to Coxsackie Correctional Facility to be evaluated by Dr. Kaskel, an oral surgeon. (Marra Aff. ¶ 9).

Dr. Marra states that on April 12, 2005, Dr. Kaskel performed surgery to close the communication. (Marra Aff. ¶ 9).  Plaintiff returned to Great Meadow C.F. and had six follow-up appointments between April 13 and April 29, 2005 (April 13, 18, 19, 21, 25, and 29). (Marra Aff. ¶ 9).  Dr. Marra alleges that the surgery performed by Dr.  Kaskel did not close the communication. *Id.*  Dr. Marra states that plaintiff was sent to Downstate Correctional Facility on May 4, 2005 to see Dr. Moore, an Oral and Maxillofacial Surgeorn. (Marra Aff. ¶ 10).  Dr. Moore performed another surgical closure of the opening. *Id.*  According to Dr. Marra, plaintiff had follow-up appointments to review his condition after his surgery at Downstate C.F.  The follow-up appointments occurred on May 6, May 11, May 18, May 25, and May 27, 2005. (Marra Aff. ¶ 10).  Dr. Marra's affidavit states that it appeared that the surgical closure by Dr. Moore was successful, but plaintiff complained that the opening still existed. *Id.*

According to Dr. Marra, plaintiff was returned to Downstate C.F. on June 1, 2005 and Dr. Moore performed "another surgical closure of the communication".  (Marra Aff. ¶ 11).  Following this second surgery by Dr. Moore, plaintiff had six follow-up appointments during June of 2005, June 3, 7, 9, 15, 22 & 27. (Marra Aff. ¶ 11).  Dr. Marra states that the second surgery by Dr. Moore was a success, but plaintiff was still complaining. *Id.*  Plaintiff was returned to Downstate C.F. for follow-up appointments with Dr. Moore on July 6, 2005 and August 3, 2005. *Id.*

Dr. Marra's affidavit states that plaintiff continued to have follow-up dental care. (Marra Aff. ¶ 12).  Dr. Marra lists eight dates upon which plaintiff was either examined by different dentists or obtained x-Rays or a CT scan. *Id.*  Across from the dates, Dr. Marra lists the type of care plaintiff received and from whom or where he received that care. *Id.*  Dr. Marra also cites the particular report under each description of care by stating "(See . . . )."  Dr. Marra states that the "subsequent follow-up appointments and tests, as listed below, have confirmed that [plaintiff] is fine." *Id.*  However,

6

there are *no reports attached to Dr. Marra's affidavit*.

**5.  Medical Care**

In order to state an Eighth Amendment claim based on constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  There are two elements to the deliberate indifference standard.  *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003).  The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind. *Id.* at 184 (citing *inter alia Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

In order to meet the first element of the standard, plaintiff must show that he has a sufficiently serious illness or injury.  *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  A medical condition has been considered "sufficiently serious" when there is a "condition of urgency," one that may result in death, degeneration, or extreme pain.  *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). The seriousness of a plaintiff's medical need may also be determined by reference to the effect of denying the particular treatment.  *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 310 (S.D.N.Y. 2001)(citation omitted).  Thus, if unnecessary and wanton infliction of pain results from the denial of treatment, or if the denial of treatment causes the inmate to suffer a lifelong handicap or permanent loss, the condition may be considered "sufficiently serious."  *Id.* (citing *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000)).

In order to meet the second element, plaintiff must demonstrate more than an "inadvertent" or negligent failure to provide adequate medical care.  *Id.* (citing *Estelle*, 429 U.S. at 105-106).  Instead, plaintiff must show that the defendants were "deliberately indifferent" to that serious medical condition.  Id.  In order to rise to the level of deliberate indifference, the defendants must have known

7

of and disregarded an excessive risk to the inmate's health or safety. *Id.* (citing *Chance*, 143 F.3d at 702). The defendants must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and they must draw that inference. *Chance*, 143 F.3d at 702 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Disagreement with prescribed treatment does not rise to the level of a constitutional claim. Sonds, 151 F. Supp. 2d at 311. Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates. *Id.* (citations omitted). An inmate does not have the right to treatment of his choice. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986). The fact that plaintiff might have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation. *Id.*

Disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment. *Sonds*, 151 F. Supp. 2d at 312 (citing *Estelle*, 429 U.S. at 107). Even if those medical judgments amount to negligence or malpractice, malpractice does not become a constitutional violation simply because the plaintiff is an inmate. *Id. See also Daniels v. Williams*, 474 U.S. 327, 332 (1986)(negligence not actionable under Section 1983). Thus, any claims of malpractice, or disagreement with treatment are not actionable under Section 1983. In certain instances, however, a physician may be deliberately indifferent if he or she "consciously chooses 'an easier and less efficacious' treatment plan." *Chance*, 143 F.3d at 703 (citing *inter alia Williams v. Vincent*, 508 F.2d 541, 544 (2d Cir. 1974)(in which the doctor chose to simply close a wound caused by the severing of plaintiff's ear, rather than attempting to reattach it)).

In this case, defendant argues that plaintiff's complaint and allegations fail to meet the legal standard required for deliberate indifference. Def. Mem of Law at 5-6 (Dkt. No. 48-6). The motion

8

for summary judgment is supported by a Local Rule 7.1 statement that cites only paragraphs of Dr. Marra's affidavit as support for claiming that no genuine issues of material fact remain in dispute. (Dkt. No. 48-5).  Dr. Marra's affidavit is a statement by him, made on personal knowledge of various treatments that plaintiff had for his dental problems, however, until the end of the affidavit, Dr. Marra does not cite to any specific medical or dental records that support his statements.  At the end of the affidavit, although Dr. Marra directs the court to various medical/dental records, ***none*** of the records mentioned are attached to the affidavit, thus, there are no records for this court to "see." (Marra Aff. ¶ 12).

 The court notes that on April 9, 2008, in response to a motion to compel filed by plaintiff, Magistrate Judge Di Bianco ordered defense counsel to file various of plaintiff's medical/dental records. (Text Order dated April 9, 2008).  Defense counsel complied with Judge Di Bianco's order on April 10, 2008. (Dkt. No. 40).  Many, ***but not all***, of the records referred to in Dr. Marra's affidavit are contained in this "response."  Only ***one*** of the eight records that Dr. Marra mentions in paragraph 12 of his affidavit is contained in this filing.

 Generally, when courts have considered whether to conduct an "independent view" of record evidence that is not included with a summary judgment motion, it is in circumstances in which the defaulting party is the non-movant. *See Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470-71 (2d Cir. 2002).  However, in *Amnesty*, the Second Circuit stated that since nothing in the Federal Rules mandates that a judge conduct an exhaustive search of the entire record before ruling on a motion for summary judgment, district courts are entitled to order litigants to provide specific record citations. *Id.*  As stated above, the Northern District of New York has adopted such a rule. LOCAL RULES N.D.N.Y. 7.1(a)(3).  This rule has been applied even to *pro se* litigants, notwithstanding the liberality with which *pro se* submissions must be treated. *See Lee v. Alfonso*, 112 Fed. Appx. 106 (2d

Cir. 2004).

In this case, it is the defendant that has failed to cite to particular portions of the record, and has completely omitted some records upon which he bases his motion for summary judgment, making his affidavit incomplete.  In any event, even if the court did look to the medical/dental records that were filed in this case,[2] defendant Marra specifically stated that he "has no personal familiarity with or knowledge of any or some of these documents." (Dkt. No. 40-1 at 1).  Many of the documents in these discovery materials have Dr. Marra's name stamped on them or have Dr. Marra's signature on them.

A motion for summary judgment must be supported by affidavits based on personal knowledge, "which set forth admissible evidentiary facts and affirmatively show that the affiant is competent to testify to those facts." *McNear v. Coughlin*, 643 F. Supp. 566, 568 (W.D.N.Y. 1986).  The papers attached to an affidavit must be either sworn or certified copies. *Id.*  The exhibits contained in defendant's response to the motion to compel are not attached to the affidavit and are **neither sworn or certified**.  Thus, the court may not consider them in this motion.  Based on this, and the fact that defendant Marra cites to documents that are not included anywhere in the record for the proposition that plaintiff is "fine," this court must deny defendant's summary judgment motion regarding plaintiff's claim of deliberate indifference.[3]

**6.    Negligence**

Defendant argues separately that the court should dismiss plaintiff's negligence and state law

---

[2] The only reason that these medical/dental records are filed is because Magistrate Judge Di Bianco ordered them to be filed pursuant to a motion to compel by plaintiff.  Normally, discovery is not filed until it is used to support a motion to compel or for summary judgment. LOCAL RULE N.D.N.Y. 26.2.

[3] This court is making no findings on the merits of plaintiff's case, and is denying defendant Marra's motion without prejudice to the defendant filing a properly supported motion for summary judgment.

claims.  In his complaint, plaintiff alleges a separate claim that Dr. Marra was "negligent in his performance of the tooth extraction and treatment following that extraction. (Compl. ¶¶ 15-17). Plaintiff also alleges that Dr. Marra was negligent in not following procedures to send plaintiff to a specialist to extract tooth #15. (Comp. ¶ 15).

With respect to plaintiff's allegations of negligence, it is clear that negligence does not rise to the level of a federal constitutional claim, and plaintiff's causes of action in this regard may be dismissed on the face of the complaint. *Daniels v. Williams*, 474 U.S. 327, 332 (1986)(negligence not actionable under Section 1983).  The court also notes that to the extent that plaintiff claims that defendant Marra violated some DOCS regulation or directive, this claim in itself does not rise to the level of a constitutional violation.  Violations of state law or regulations in themselves do not state a viable section 1983 claim. *Dixon v. Goord*, 224 F. Supp. 2d 739, 744-45 (S.D.N.Y.  2002). *See Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir. 1990)).

**WHEREFORE,** based on the findings above, it is hereby

**ORDERED**, that defendant's motion for summary judgment (Dkt. No. 48) is **GRANTED IN PART**, and the plaintiff's **NEGLIGENCE and STATE LAW CLAIMS ARE DISMISSED**, and it is further

**ORDERED**, that defendant's motion for summary judgment is **DENIED WITHOUT PREJUDICE IN ALL OTHER RESPECTS.**

Dated: March 7, 2009

Thomas J. McAvoy
Senior, U.S. District Judge